IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
RITA MICHELLE HUNT          )
(BRACKIN),                  )
                            )
    Plaintiff,              )
                            )     CIVIL ACTION NO.
    v.                      )     1:13cv104-MHT
                            )          (WO)
ARMY FLEET SUPPORT, LLC;    )
L-3 COMMUNICATIONS;         )
DON DONLEY;                 )
PENNY WESTRICK; and         )
INTERNATIONAL ASSOCIATION   )
OF MACHINISTS AND AEROSPACE )
WORKERS, AFL-CIO., LOCAL    )
LODGE NO. 2003,             )
                            )
    Defendants.             )
```

OPINION

In this lawsuit challenging the termination of her employment, plaintiff Rita Michelle Hunt asserts two federal claims: a claim of breach of a collective-bargaining agreement under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185; and a claim of breach of duty of fair representation as derived from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a).  She

also asserts three claims based on state law: constructive discharge, wrongful termination, and civil conspiracy. She names as defendants her former employer (Army Fleet Support, LLC), the company of which Army Fleet is a division (L-3 Communications), two Army Fleet employees (Don Donley and Penny Westrick), and her union (International Association of Machinists and Aerospace Workers Local Lodge 2003). For her federal claims she invokes jurisdiction under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), as well as 28 U.S.C. § 1331 (federal question). Although she does not invoke supplemental jurisdiction under 28 U.S.C. § 1367, it would be appropriate for her state-law claims.[1]

The case is now before the court on the defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6) for

---

1. Although Hunt's complaint does not invoke supplemental jurisdiction or otherwise indicate that her constructive-discharge, wrongful-termination, and civil-conspiracy claims are based on state law, her briefing reveals that she is invoking Alabama law.

failure to state a claim. For the reasons discussed below, the motions will be granted.

## I. LEGAL STANDARD

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007), "only enough facts to state a claim to relief that is plausible on its face." Id. at 574.

```
                        II. BACKGROUND
```

Hunt worked for contractors at Fort Rucker, Alabama, for eleven years, supporting the United States Army's aviation projects. She was a member of a union, which had a collective-bargaining agreement with her employer.

In May 2010, Hunt took a government-owned vehicle off-base in order to use a tanning bed during her lunch break. Someone made an ethics complaint to her employer. Three days later, Hunt met with company representatives Donley and Westrick and union representatives Mike Cooke and Josh Allgood to discuss her potential termination. While in Hunt's presence, Allgood argued that she should keep her job, but then he went into a separate room to speak to Westrick. When Allgood returned from the meeting, he instructed Hunt to sign termination paperwork.

After the meeting, Cooke told Hunt that he would not "push to save her job" due to pressure from other union members, but after "some time ... he would try to get her job back later." Compl. (Doc. No. 1) ¶ 19.

In August 2012, Hunt learned that Allgood had been having an affair with Westrick.  Hunt filed a grievance with the union soon after, alleging several ways in which her ethics investigation and termination had not complied with the terms of the collective-bargaining agreement and claiming that she had not been fairly represented because of Allgood's affair with Westrick.  The union did not pursue her grievance, and Hunt filed this lawsuit on February 14, 2013.

### III. DISCUSSION

Hunt brings five claims: two federal-law claims (breach of the collective-bargaining agreement by her employer and breach of the duty of fair representation by IAM) and three state-law claims (constructive discharge, wrongful termination, and civil conspiracy). As described below, the federal claims are barred by the statute of limitations and the state-law claims are federally preempted.

5

A. Federal Claims

With the National Labor Relations Act and related legislation, Congress established a "comprehensive federal law of labor relations" in the private sector. Lodge 76 v. Wisconsin Employment Relations Comm'n, 427 U.S. 132, 155 (1976).  Under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, federal law governs the interpretation of collective-bargaining agreements. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 457 (1957).  Furthermore, courts have found that the federal scheme establishes duties of a union toward the employees that it represents, including a duty to "represent fairly the interests of all [represented employees] during the negotiation, administration, and enforcement of collective-bargaining agreements." International Broth. Of Elec. Workers v. Foust, 442 U.S. 42, 47 (1979).  "[T]he duty of fair representation requires a union 'to serve the interests of all members without hostility or discrimination toward any.'" Marquez v. Screen Actors

Guild, Inc., 525 U.S. 33, 44 (1998) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)). While an employee does not have "an absolute right to have his grievance taken to arbitration," "a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." Vaca, 386 U.S. at 191.

Hunt claims that her employer, Army Fleet Support, breached the collective-bargaining agreement by terminating her without a full investigation. She also claims that the union should have demanded that the company abide by the terms of the collective-bargaining agreement and, in failing to do so, breached its duty of fair representation. "Ordinarily ... an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement.... [But] when the union representing the employee in the grievance/arbitration procedure ... breach[es] its duty of fair representation ... an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration

proceeding." Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 886 n.4 (11th Cir. 2013) (quoting DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 163–65 (1983) (alterations in original)). When a plaintiff brings the breach-of-contract claim together with a claim against the union, as Hunt did, such a lawsuit is called a 'hybrid § 301/duty-of-fair-representation' lawsuit.

The statute of limitations for hybrid § 301/duty-of-fair-representation' lawsuits, as Hunt admits, is six months under § 10(b of the National Labor Relations Act, 29 U.S.C. § 160(b). Proudfoot v. Seafarer's Int'l Union, 779 F.2d 1558, 1559 (11th Cir. 1986). "For the purpose of determining when the § 10(b) period begins to run, [a trial court] look[s] to when plaintiffs either were or should have been aware of the injury itself, not to when plaintiffs became aware of one of the injury's many manifestations." Benson v. General Motors Corp., 716 F.2d 862, 864 (11th Cir.1983). "Applying this principle to hybrid § 301 suits, the timeliness of the suit must be measured from the date on which the employee[s] knew or

8

should have known of the union's final action or the date on which the employee[s] knew or should have known of the employer's final action, whichever occurs later." Proudfoot, 779 F.2d at 1559.

Here, the employer's final action clearly occurred during the meeting at which Hunt was terminated. However, it is less clear when she should have known that the union was taking no further action. Cooke allegedly said that she should "allow some time to go by" and that he "would try to get her job back later." Compl. (Doc. No. 1) at ¶ 19. That statement would extend the time before Hunt should have known that the union would take no further action on her behalf.  But the court does not need to address this difficult question of precisely how long Hunt could have reasonably waited before she should have known the union would not act, for, regardless, it would not have been reasonable for her to wait two-and-a-half years (until August 2012, six months before the commencement of this action) for the union to try to get her job back.  By that

time, she should have known that the union would take no further action.

Hunt argues that the statute of limitations did not begin accruing until she learned of the affair between Allgood and Westrick.[2] She argues that this was the first time that she was aware that she had been wronged and that she could not have previously brought a cause of action to challenge her termination and the union's allegedly faulty representation. This proposed rule runs contrary to established law: the statute of limitations runs from the last action (or failure to act) which caused the plaintiff's injury, not the first time the plaintiff becomes aware of the exact reasons that the union breached

---

2. Hunt also discusses alleged workplace infractions on the part of Allgood which went unpunished. It is not clear how these facts are relevant. Perhaps Hunt is implying a violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 1981a & 2000e through 2000e-17), which protects against employment discrimination on the basis of sex. If Hunt believes that sex discrimination played a role in her termination, that claim would also be time-barred since she did not file a charge with the Equal Employment Opportunity Commission within 180 days of her termination. 42 U.S.C. § 2000e-5(e)(1).

its duty of fair representation. Proudfoot, 779 F.2d at 1559.

Even if the court did apply Hunt's proposed rule, her own pleadings show that she would still be time-barred. Cooke's alleged statement that he would not fight for Hunt's job because of political pressure from other union members amounts to an admission of arbitrary, bad-faith decisionmaking, breaching the duty of fair representation. See Vaca, 386 U.S. at 191.  Therefore, according to Hunt's own pleadings, she learned that the union was breaching its duty on the same day that she was terminated. She cannot now argue that she was ignorant merely because she discovered additional arbitrary or bad-faith reasons that the union failed to pursue her grievance.

## B. State-Law Claims

Hunt's state law claims are preempted by her hybrid § 301/duty-of-fair-representation claims. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, grants jurisdiction to federal district courts over contract

11

disputes between unions and employers. The Supreme Court interpreted § 301 to require the development of a body of federal law governing collective-bargaining agreements. <u>Lincoln Mills of Alabama</u>, 353 U.S. at 457 (1957). This body of federal law preempts state law in deciding a dispute over a collective-bargaining agreement. <u>Teamsters Local 174 v. Lucas Flour Co.</u>, 369 U.S. 95, 102-04. "State law which frustrates the effort of Congress to stimulate the smooth function of [the collective-bargaining] process thus strikes at the very core of federal labor policy." <u>Id</u>. at 104. Therefore, "Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." <u>Id</u>.

A state-law claim is preempted by § 301 if the claim "requires the interpretation of a collective-bargaining agreement." <u>United Steelworkers v. Wise</u>, 642 F.3d 1344, 1350 (11th Cir. 2011) (finding that a fraud counterclaim was preempted where the defendant was claiming fraudulent representations about the substance of a collective-bargaining agreement) (quoting <u>Lingle v. Norge Div. Of

12

Magic Chef, Inc., 486 U.S. 399, 413 (1988)); see also Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985) (statutory state tort of bad faith in administration of disability-insurance program relies on interpretation of collective-bargaining agreement to determine terms of insurance program).

Hunt's state-law claims are wrongful termination, constructive discharge, and civil conspiracy. Each of these claims transparently relies on interpretation of the collective-bargaining agreement.

What made her termination wrongful? "[T]he 'Company' violated the CBA [collective-bargaining agreement] by not using the appropriate firing procedures." Resp. to Army Fleet Support's Mot. to Dismiss (doc. no. 32) at 2.

As for the constructive-discharge claim, an employer who constructively discharges an employee "is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." Irons v. Serv. Merchandise Co., Inc., 611 So. 2d 294, 295 (Ala. 1992) (emphasis added). What is the alleged illegal conduct

13

involved in Hunt's constructive discharge?  Breach of the collective-bargaining agreement.

Finally, "liability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy." Jones v. BP Oil Co., 632 So. 2d 435, 459 (Ala. 1993) (quoted in Willis v. Parker, 814 So. 2d 857, 867 (Ala. 2001)).  What is the underlying wrong for the conspiracy Hunt alleges?  The company's failure to follow the terms of the collective-bargaining agreement and the union's breach of its duty of fair representation.

Since each of these claims relies on an interpretation of the collective-bargaining agreement, they are preempted by § 301.  With all of Hunts claims either preempted or time-barred, her lawsuit is due to be dismissed.

* * *

14

Accordingly, all of the defendants' dismissal motions will be granted and this case dismissed.  An appropriate judgment will be entered.

DONE, this the 18th day of March, 2014.

    /s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**